ROBERT J. JONKER, CHIEF UNITED STATES DISTRICT JUDGE
Petitioner Farmers Mutual Hail Insurance Company of Iowa seeks confirmation of an arbitration award entered against Respondent Edgar Miller. Respondent Miller seeks nullification or vacatur of the award. The facts are not in dispute, and the parties seek judgment as a matter of law. Based on all matters of record, the Court finds no basis for vacatur, but does find a basis for nullification of the award as it pertains to retroactive changes to audited and settled crop insurance claims for the 2012 and 2013 season. The retroactive redeterminations necessarily involved policy decisions that neither the Arbitrator nor this Court has power to make in the first instance. Accordingly, the Arbitrator's award must be nullified and cannot be confirmed.
A. Mr. Miller's Crop Insurance Policies
Respondent Edgar Miller is a long-time farmer with crops in Michigan and Indiana. Mr. Miller purchased multiple peril crop insurance for soybean and corn crops from Petitioner Farmers Mutual Hail Insurance Company of Iowa ("FMH") for crop years 2012, 2013, and 2014. FMH issued the policies through the federal farm assistance program under the Federal Crop Insurance Act, 7 U.S.C. § 1501, et seq . The Federal Crop Insurance Corporation ("FCIC") administers the federal farm assistance program under the umbrella of the United States Department of Agriculture. The terms and conditions of the policies Mr. Miller purchased appear in the form Common Crop Insurance Policy ("CCIP"), which C.F.R. § 457.8 embodies as a federal regulation. The FCIC reinsures the CCIP and Farmers Mutual. The Risk Management Agency ("RMA") operates and manages the FCIC.
FMH adjusted and paid Mr. Miller's claims under the 2012 and 2013 policies. In 2014, the FCIC directed FMH to audit Mr. Miller for the 2014 and earlier crop years. FMH found Mr. Miller's 2014 crop year recordkeeping inadequate and determined that Mr. Miller did not qualify for payments for 2014 crop losses he alleged. FMH canceled Mr. Miller's crop insurance for the year 2015. FMH did not stop there, though. It also reached back and changed its 2012 and 2013 claims determinations. FMH determined that it had overpaid Mr. Miller $ 36,980 for the 2012 crop year and $ 108,230 for the 2013 crop year, and it demanded repayment.
B. Arbitration
Mr. Miller disagreed with the determinations and invoked arbitration.[1] His demand states:
*976 The nature of the dispute is the decision of Farmers Mutual Hail to cancel Mr. Miller's crop insurance for the year 2015, the refusal of Farmers Mutual Hail to pay crop insurance benefits owed to Mr. Miller for the year 2014, and the claim of Farmers Mutual Hail for reimbursement of overpaid crop insurance benefits to Mr. Miller in 2012 and 2013, including the demand of Farmers Mutual Hail that Mr. Miller pay approximately $ 240,000.
(ECF No. 6-5, PageID.131.) FMH and Mr. Miller executed an Arbitration Agreement in December 2015, "to govern the arbitration of [Mr. Miller's] claims under his federal Multiple Peril Crop Insurance ... policy or policies issued by [FMH]." (ECF No. 6-6, PageID.134-35.) The Arbitration Agreement provides that the "Commercial Rules of the American Arbitration Association ("AAA") will be followed except as specifically altered by the terms of the Policy, inclusive of those requirements set forth in 7 C.F.R. 457.8, Section 20, and bulletin MGR-12-003.1." (Id. , PageID.134.)
Mr. Miller's Statement of Claims before the arbitrator states that he is owed $ 105,701.00 in crop insurance benefits for the 2014 crop year; denies that he owes FMH "any amount of money, as a reimbursement, or otherwise, arising out of crop insurance claims and payments to him for the crop years 2012 and 2013[;]" and "affirmatively states that the adjustment, review, and audit of the 2012 [and 2013] claim[s] undertaken by [FMH] prior to its recent claim[s] for reimbursement [were] correct." (ECF No. 6-7, PageID.137-38.)
FMH filed an arbitration "answering statement and counter-claim" seeking recovery of the alleged 2012 and 2013 overpayment amounts. (ECF No. 6-8, PageID.144-44.) The counter-claim acknowledges that "Miller presented claims for corn and soybean crop losses under his MPCI policies and was paid indemnities for crop losses in 2012 and 2013." (Id. , PageID.144.) The counter-claim notes that after a later review of Mr. Millers policies and claims, "FMH determined that Miller was not eligible for the indemnity payments paid to him in crop years 2012 and 2013 under applicable FCIC rules and regulations and that the claims sums paid for corn and soybean losses in crop years 2012 and 2013 should be repaid." (Id. ) The counter-claim asserts that Mr. Miller owes FMH approximately $ 200,000 plus interest for overpayments for 2012 and 2013. (Id. , PageID.144.) The counter-claim also states that Mr. Miller failed to pay the premiums for 2014 policies and that he owes FMH approximately $ 61,154.54 for the 2014 policy premiums. (Id. ) The counter-claim "requests payment of the indemnity overpayments for 2012, the indemnity overpayments for 2013, and the premium amounts due for the MPCI policies issued for crop year 2014, plus any and all applicable interest...." (Id. )
*977 C. Arbitration Award
An arbitration hearing took place in August 2016. The Opinion and Award of the Arbitrator issued in September 2016. (ECF No. 6-18, PageID.240-245.) The Opinion details "applicable requirements of federal law that govern this arbitration," including, among others, that "[t]he Arbitrator must apply, but may not interpret, the policy;" that "[t]he burden of proof for each element of a claim is placed upon the insured;" and that "[a]ll policies and procedures must be strictly construed." (Id. , PageID.240.) The Opinion notes that in 2014, "RMA data mining indicated a need for a Conflict of Interest review of [Mr. Miller's 2012 and 2013 corn and soybean claims, for which he had earlier been paid." (Id. , PageID.242.) Adjuster Steve Sondgeroth, who completed the Conflict of Interest review, testified at the arbitration hearing, and his report was a key exhibit for FMH. (Id. )
The Arbitrator found Mr. Sondgeroth "a credible witness" and found that "his work product was thorough and accurate. He pointed out serious shortcomings in the documentation of Miller's claimed losses for 2012 and 2013." (Id. , PageID.243.) The Arbitrator found Mr. Miller's recordkeeping inadequate. (Id. ) "It is telling that Miller presented no documentary evidence to rebut the findings of the Adjuster's Special Report...." (Id. ) According to the Arbitrator, "[t]he burden of proof for Miller's claims relating to 2012 and 2013 lies with Miller. Aside from his argument that the original adjusters, who did not drill deeply into his claims, agreed with him, he offered no documentary support for the accuracy of the original claims and little rebuttal to the conclusions reached by Mr. Sondgeroth." (Id. , PageID.244.) The Arbitrator concluded that FMH properly determined that it had overpaid Mr. Miller's claims for the 2012 and 2013 crop years. (Id. ) The Arbitrator also found in favor of FMH on the 2014 claim. (Id. , PageID.244-45.)
FMH now seeks an order confirming the Arbitration Award. (ECF No. 15.) Mr. Miller moves to vacate or nullify the arbitration award. (ECF No. 5.)
D. The Current Dispute
The Federal Arbitration Act ("FAA") reflects "a presumption that arbitration awards will be confirmed." Nationwide Mut. Ins. Co. v. Home Ins. Co. , 429 F.3d 640, 643 (6th Cir. 2005). "A federal court may vacate an arbitration award only in very limited circumstances." Id. (quotation marks omitted). Those limited circumstances include "where the arbitrators exceeded their powers...." 9 U.S.C. § 10. In addition, if an arbitrator makes a decision construing the meaning of a policy provision, the arbitration decision must be nullified because policy interpretation is reserved to the FCIC.
Mr. Miller asserts that the Arbitrator exceeded the scope of his authority by making policy or procedure interpretations in the first instance instead of seeking necessary interpretations from the agency. Section 20(a)(1)(ii) of the CCIP provides explicitly:
[I]f the dispute [being arbitrated] in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you [the insured] or we [the insurer] must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC .... Failure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award.
(ECF No. 6-4, PageID.121.) Mr. Miller contends that the Arbitrator improperly *978 made policy or procedure interpretations including that the FMH counter-claim was arbitrable;[2] that Mr. Miller bore the burden of proof as to all claims, including the FMH counter-claim, even though FMH had previously adjusted and paid the claims; and that yield assignment applied to Mr. Miller's 2012 and 2013 claims. (ECF No. 5, PageID.68.)
E. The Arbitrator's Award Must Be Nullified
The Court finds that the dispute between Mr. Miller and FMH as to the alleged 2012 and 2013 overpayments involves a policy interpretation regarding how to treat revisions of prior claims that have already been adjusted and paid.[3] The dispute over a retroactive redetermination over the 2012 and 2013 crop years squarely raises policy interpretation issues. There is nothing in the policy language that expressly permits a redetermination of previously settled crop years, let alone allocates a burden of proof in any such retroactive redetermination to the farmer. By allowing FMH to reopen previously-settled crop years, and by making the farmer bear the burden of re-establishing the earlier-settled years again, the Arbitrator necessarily made policy decisions. More accurately, the Arbitrator read into the policy requirements that are not expressly there. Under the heavily regulated crop insurance regimen, that kind of policy interpolation must be made by the FCIC, and not by an arbitrator.
The Policy provisions that actually address making and payout of claims in the first instance appear to contemplate finality. Section 14(f) and (g) detail FMH's duties and emphasize prompt payment of claims. "If you have complied with all the policy provisions, we will pay your loss within 30 days after the later of: (1) We reach agreement with you; (2) Completion of arbitration ...; (3) Completion of any investigation by USDA, if applicable, ... if no evidence of wrongdoing has been found; (4) The entry of a final judgment by a court of competent jurisdiction." (ECF No. 6-3, PageID.109.) Similarly, the policy language covering the farmer's obligations for making claims emphasizes prompt submission of materials. Overall, Section 14 provides for a prompt and orderly claim and settlement process without any provision for retroactive redeterminations.
FMH points to Section 21 of the CCIP as the authority for revisiting and demanding repayment of previously adjusted and paid claims. Section 21(b)(3) provides:
While you [the insured] are not required to maintain records beyond the record retention period specified in section 21(b)(2), at any time, if we or FCIC have evidence that you, or anyone else assisting you, knowingly misreported any information related to any yield you have certified, we or FCIC will replace all yields in your APH database determined to be incorrect with the lesser of an assigned yield determination in accordance with section 3 or the yield determined to be correct:
(i) If an overpayment has been made to you, you will be required to repay the overpaid amount....
*979 (ECF No. 6-4, PageID.122.) But by its express terms, Section 21(b)(3) applies only where FMH or the FCIC have evidence of a knowing misrepresentation. (Id. ) The most the Arbitrator found was sloppy recordkeeping. (Arbitrator Decision, ECF No. 6-18, PageID.241) ("Miller may be a good farmer, [but] he is a very poor record keeper.") The record contains no allegation or finding that Mr. Miller or anyone else assisting him "knowingly misrepresented information related to any yield" he certified. The parties have identified no other part of the Policy or the regulatory scheme that permits FMH to redetermine previously settled crop years retroactively. Section 21(b)(3) does not on its face apply here, because no knowing misrepresentation has been alleged or found.
The fairest and most natural way to read Sections 14 and 21 together is to conclude that once a claim for any particular crop year is settled by payment under Section 14, it remains settled, unless FMH or FCIC make out a case of knowing misrepresentation under Section 21. The Arbitrator's decision here necessarily rests on a different policy interpretation: namely, one that leaves open all prior determinations for at least the record retention period of Section 21(b)(2), and that leaves the burden on the farmer throughout that period regardless of any prior audit and payment. The Court believes the Arbitrator's policy construction is less defensible than the one suggested by the Court. But the only point necessary for nullification is the recognition that some policy construction was necessarily made. And under the policy, neither the Arbitrator nor this Court may do that in the first instance. The function is reserved to the FCIC under Section 20(a)(1)(ii), presumably with judicial review through the normal administrative procedures of the APA and the Federal Crop Insurance Act. Because the FCIC has not had that opportunity here, the award must be nullified, as specified by Section 20.
Mr. Miller also seeks vacatur of the Arbitration Award as "procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). He contends that FMH relied in part on crop production worksheets bearing forged signatures of Mr. Miller in making its determinations. (ECF No. 6, PageID.84-85.) The Court finds no basis to conclude that the Arbitration Award was procured by corruption, fraud, or undue means, or that it is otherwise subject to vacatur under the Federal Arbitration Act. However, because the award is subject to nullification under Section 20 of the policy, and because Section 20 does not provide for partial nullification, the award must be nullified in its entirety, pending any necessary policy determination by the FCIC.
Conclusion
For these reasons, the Court concludes that a policy or procedure interpretation is necessary and that the Arbitration Award is nullified in its entirety under Section 20, pending a policy interpretation by the FCIC. The motion of FMA to confirm the Arbitration Award (ECF No. 13 ) is DENIED . The motion of Mr. Miller to set aside the Arbitration Award is GRANTED only to the extent of nullification under Section 20 of the policy, and DENIED in all other respects.
JUDGMENT
In accordance with the Opinion and Order entered this day, the motion of FMA to confirm the Arbitration Award (ECF No. 13 ) is DENIED . The motion of Mr. Miller to set aside the Arbitration Award is GRANTED only to the extent of nullification under Section 20 of the policy, and DENIED in all other respects.

The CCIP provides that if the parties disagree about a determination, subject to exceptions not applicable here, "the disagreement may be resolved through mediation in accordance with section 20(g)." (CCIP, § 20(a), ECF No. 6-4, PageID.120.) If mediation fails or the parties do not agree to it, "the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose." (Id. , PageID.121.) Section 20(c) provides for judicial review. (Id. , PageID.122.) Section 20(f) provides that "[i]n any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding." (Id. ) Section 20(f) also addresses potential conflicts with state and local laws, and it provides that "[i]f there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control." (Id. )

Embedded in this claim is a theory that FMH's arbitration counter-claim was time-barred based on a CCIP limitations period. (ECF No.5, PageID.68.)

The Court finds Mr. Miller's arguments that the Arbitrator lacked authority to consider the arbitration counter-claim unpersuasive. FMH's counter-claim simply mirrored Mr. Miller's own claims. Even without FMH's counter-claim, a decision on Mr. Miller's claims would have generated the same result.